## Autenrieth's Estate.

*Wills—Construction—Residuary clauses.*

1. Where testatrix, after giving general and specific legacies of stocks and bonds, directs "the remainder to be divided equally between my nephew A and my niece B," and, after giving specific legacies of jewelry, furniture and paintings, bequeaths "whatever else may be left to divide, household linen, etc., to B," the second clause must be construed *ejusdem generis* and does not include stocks, bonds or the like.

*Specific and general legacies—Gift of "my A bonds" distinguished from gift of "A bonds."*

2. Where testatrix left her "Chesapeak R. R. bonds" to A, and she had no such bonds, but did have two bonds of the Chester & Philadelphia Ry. Co., the finding by the Auditing Judge upon the testimony that she intended the bequest to cover these latter bonds and an award of their proceeds to the legatee will not be reversed.

3. A gift of "my bonds" or "bonds owned by me" or the like of a corporation named is *prima facie* specific; but a gift of bonds generally of a corporation named is *prima facie* general, and in the latter case the legatee would be entitled to demand the bonds from the executrix, although they had been sold by the testatrix in her lifetime.

*Wills—Construction—Gift of bonds where stock is intended.*

4. A gift by testatrix to her niece "of the Philadelphia salt bond," it being established that testatrix had no such bond, but did have ten shares of the stock of the Pennsylvania Salt Manufacturing Company, may be interpreted to cover such stock: Per LAMORELLE, P. J., Auditing Judge.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1926, No. 3050.

Testatrix left a will, duly admitted to probate, which, after making a pecuniary bequest and sundry specific bequests of stock, contained the following clauses:

"To my Niece Florence Thorp, Phila. Electric Bonds, and, The Phila Salt Bond.

"To my dear friend Lilian D. Wright, of Bevier Ky. I bequeath to her, and her heirs, my Stetson Stock or Bonds and Penn. Ohio Electric Co. To my

niece, Ethelwynne MacDonald, my Phila. Electric Bonds. To my Nephew, Walton W. Thorp Chespeak R. R. Bonds. The remainder, to be divided equally, between, my Nephew Walton W. Thorp, and my niece Ethelwynne MacDonald. To my niece, Florence Thorp, my diamond engagement ring, diamond bar pin and pearl bar pin, also to her my large cameo pin. My oriental rugs, and all my dresses, and wearing apparel.

"To Margaret Williams, I bequeath, my books, and book cases. My furniture, and the paintings she desires to have. I leave to my Niece Ethelwynne MacDonald and jewelry, after, Florence has been given, or bequeather to her.

"To Lilian Wright Jr. my wrist watch, is to be given. What ever else may be left to divide, House hold linen, etc. I bequeath to my Niece Ethelwynne MacDonald, and her husband. My piano is also for Ethelwynne."

The Auditing Judge, LAMORELLE, P. J., said in his adjudication:

"A number of questions concerning the interpretation of the will are submitted to me. They will be considered *seriatim*. I premise the consideration by stating that a stipulation hereto attached, marked "A," is submitted showing that among decedent's papers was found a sheet of paper containing the year 1921 list of securities in her handwriting. It may be assumed, therefore, that she either had this paper before her when she wrote her will or else trusted to her recollection of what the paper contained for what she then owned in the way of investments. The questions involved simplify themselves when we realize the scheme of the will.

"I divide the will into two parts. The first part deals with her securities; the second part with her personal belongings. I thereby eliminate any controversy as to the two residuary clauses. To my mind, there is no conflict. After disposing by name, sometimes incorrectly, of certain securities, testatrix thus concludes: 'The remainder to be divided equally, between, my nephew Walton W. Thorp, and my niece Ethelwynne MacDonald.' In the part of the will wherein testatrix disposes of her personal belongings and immediately after a gift to Lillian Wright, Jr., of her wrist watch, she thus continues: 'What ever else may be left to divide, House hold linen, etc. I bequeath to my Niece Ethelwynne MacDonald, and her husband.' I am, therefore, of opinion, and so rule, that one-half of the residuary estate composed of securities or however the same may be composed, other than articles of personal belonging, passes in equal shares to the nephew and niece, and that whatever of personal belongings, household furniture, etc., is left after dividing the articles specifically given passes to the niece and her husband.

"The gift 'To my Niece Florence Thorp . . . The Phila. Salt Bond,' I interpret to cover ten shares of stock of the Pennsylvania Salt Manufacturing Company. Testatrix had no bond; she did have these ten shares, and in the paper marked exhibit 'A' they appear thus:

"  'Penn. Salt                                1,000.00                    50.00'

"(See Salt's Estate, 8 Dist. R. 325; Conley's Estate, 197 Pa. 291; Townsend *v.* Townsend, 1 Law Reports, Irish (1877), 180.

"The gift following really presents some difficulty: 'To my Nephew Walton W. Thorp Chespeak R. R. Bonds.' Testatrix at the time had no Chesapeake bonds, so far as the record shows. The list submitted (exhibit 'A') has this item:

"  'Chespeake R. R.                          2,000.00                   100.00'

"She did have, however, Chester & Philadelphia Railway bonds, which were valued at $2000, the interest or income therefrom being at 5 per cent., $100 annually. These bonds have been sold by the executrix, in all probability, in

order to raise money for the settlement of the estate. On its face the legacy is not specific; if it were, it would fall (Snyder's Estate, 217 Pa. 71; Sponsler's Appeal, 107 Pa. 95; McGaw's Estate, 85 Pa. Superior Ct. 545), unless I could bring this will within the interpretation given in Ferreck's Estate, 241 Pa. 340, 22 Dist. R. 151. I have concluded that testatrix had in mind the Chester & Philadelphia Railway bonds, and that these are the bonds she intended to give to her nephew. Deposit slips, copies of which are shown in exhibit 'A,' strengthen this belief, because at and around the time of the making of her will, shown from its date, she was depositing the coupons clipped from the railway company securities. This ruling necessitates the accountant paying cash instead of delivering the securities, and in event that the legatee refuses to accept cash, any party in interest may apply to me for further consideration of this one question."

*Vivian Frank Gable (Gable, Vaughn & Gaul* with him), for Ethelwynne MacDonald, exceptant.

*Thomas S. Williams,* for Walton W. Thorp, contra.

GEST, J., Feb. 12, 1927.—The will of this testatrix, holographic and self-inspired, is somewhat complicated, but only two questions are raised by the exceptions, and we are of opinion that the Auditing Judge correctly decided both of them in his adjudication, so that there remains very little for us to add to it.

The testatrix, in writing her will, evidently had in mind her possessions as divisible into two classes: first, her stocks and bonds; and second, her personal and household effects. Many of her stocks and bonds she bequeathed specifically, and added, "the remainder to be divided equally between my nephew, Walton W. Thorp, and my niece, Ethelwynne MacDonald." Had she stopped there, it is evident that these legatees would take everything not theretofore specifically bequeathed. The testatrix then bethought herself of her personal effects, and proceeded to bequeath specifically her jewelry, clothing, books, furniture, paintings and watch, and added, "whatever else may be left to divide, Household linen, etc., I bequeath to my niece, Ethelwynne MacDonald, and her husband;" and finally the testatrix annexed a specific bequest of her piano to Ethelwynne. It seems very clear to us that the second so-called residuary clause refers only to the residue of her personal and household effects, especially as this clause mentions "Household linen, etc." The abbreviation, etc.," standing for *et cetera,* can only mean, in this connection, "and the other things," *ejusdem generis,* or of the like character, and certainly cannot by any elasticity of construction be stretched to include stocks, bonds or the like.

The other exceptions relate to the finding of the Auditing Judge in relation to the gift to Walton W. Thorp of "Chespeak Railroad bonds." The testatrix possessed no Chespeak or Chesapeake bonds; in fact, there are no bonds known by that name, but she did own two Chester and Philadelphia Railway bonds of $1000 each, and the Auditing Judge, after a careful consideration of the testimony, awarded these to the legatee, or rather their proceeds, as they were sold by the executrix to raise money for the settlement of the estate. We agree with the Auditing Judge in his conclusions.

The exceptant argued that the bequest was specific, and presumably adeemed by the testatrix, and that whatever was given, therefore, passed under the second so-called residuary bequest. As the gift was not of "my bonds," or "bonds owned by me," or the like, it would, *prima facie,* be a general legacy, which the legatee would be entitled to demand from the executrix.

Autenrieth's Estate.

The Auditing Judge has, however, found as a fact that the testatrix intended to give specifically the bonds of the Chester and Philadelphia Railway Company. However this may be, as the exceptions are based on the theory that the legacy so adeemed fell into the second so-called residuary clause, they must in any aspect of the case be dismissed, as we have shown that this clause has no application.

All exceptions are dismissed and the adjudication is confirmed absolutely.

Thompson, J., was absent.